## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| TIFFANY HARRIS, *individually, and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HOMESECURES, INC.,<br><br>Defendant | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**<br><br>**DEMAND FOR JURY TRIAL** |

### CLASS-ACTION COMPLAINT

Plaintiff, Tiffany Harris ("Plaintiff", "Ms. Harris" or "Harris"), on behalf of herself and all others similarly situated, by and through her undersigned attorneys, submits her Class-Action Complaint against Defendant American HomeSecures Inc. ("Defendant" or "AHS"). In support thereof, Plaintiff states as follows:

### NATURE OF THE CASE

1. Plaintiff Tiffany Harris brings this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendant.

2. Defendant violated Plaintiff' and the putative class-members' rights by placing solicitation calls to Plaintiff and the putative class members' residential lines with the use of an artificial or prerecorded voice message. Those acts and omissions, which are described at length herein, were in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* and the TCPA's corresponding regulations.

## BACKGROUND ON THE TCPA

3. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

4. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

5. Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment.[1]

6. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems–principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

7. In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminated this established business relationship exemption.

---

[1] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list (last accessed on May 25, 2023) "Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases."

8. Therefore, all pre-recorded telemarketing calls to residential lines and all pre-recorded calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

9. As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[2] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(9).

CLASS-ACTION COMPLAINT

- Prohibit unsolicited advertising faxes.

10. Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

11. In fact, in 2021 alone, there were over *five million complaints* from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

12. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87

(2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

14. This Court has personal jurisdiction over Defendant AHS, which is headquartered and systematically conducts business in the State of Texas.

15. Venue is proper pursuant to 28 U.S.C. §1391(b)(1) and 28 U.S.C. §1391(b)(2).

## PARTIES

16. Plaintiff, Tiffany Harris is a natural person who resided in Warrior, State of Alabama at all times relevant hereto.

17. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

18. Defendant AHS is a corporation located at 1910 Pacific Avenue, Suite 19600, Dallas, Texas, 75201.

19. AHS is a "person" as that term is defined by 47 U.S.C. §153(39).

20. AHS acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

21. Defendant acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, and representatives.

## FACTUAL ALLEGATIONS

### *Facts Specific to Harris*

22. At all times relevant hereto, Plaintiff, owned a cell phone number (205)-xxx-9790 ("Cell Phone").

23. Plaintiff used that cell phone for primarily residential purposes, such as speaking with family.

24. Harris's number was registered to her as an individual, and not to a business.

25. Harris's registered her number on the Federal Do-Not-Call Registry in or around January 26, 2022, in order to obtain solitude from unwanted telemarketing calls.

26. At all times relevant, Harris was the sole user and/or subscriber of the Cell Phone and was financially responsible for phone service to the Cell Phone.

27. In AHS's overzealous attempt to market its home security services, AHS willfully or knowingly made (and continues to make) unsolicited telemarketing phone calls utilizing an artificial and/or pre-recorded message without the prior express written consent of the call recipients, in addition to placing telemarketing calls to people registered on the National Do Not Call Registry.

28. Through this conduct, AHS has invaded the privacy of Ms. Harris and members of the Class.

29. At no time prior to AHS first initiating its call to Ms. Harris did Ms. Harris provide her Cell Phone number to AHS, or through any medium.

30. At no time did Ms. Harris ever enter in a business relationship with AHS before the call campaign.

31. At no point did Ms. Harris provide AHS with her express written consent to be called for telemarketing purposes.

32. Nonetheless, on or before October 17, 2022, Defendant started placing telemarketing phone calls to Plaintiff soliciting its home security services.

CLASS-ACTION COMPLAINT

33. On October 17, 2022, Ms. Harris received a call to her Cell Phone from 205-585-8628. After Harris answered, she was greeted with voice technology known as "soundboard" or "avatar", which uses AI and pre-recorded clips programed to respond to certain prompts.

34. It was evident to Ms. Harris that the voice she heard was pre-recorded and/or computerized because, *inter alia*: (a) the generic content of the voice; and (b) the tone, cadence and inflection of the voice, which sounded to the Ms. Harris's ears like a pre-recorded and/or computerized voice, rather than a human voice from a live individual on the line.

35. Like most people, Harris can differentiate the characteristics and sounds of a pre-recorded voice in contrast to a live human voice.

36. The pre-recorded "representative" identified the calling party as Defendant and asked Harris if she was a homeowner and had home security, then indicated a representative would call her back.

37. Following this call, on October 17, 2022, a live agent who identified himself as "Brian" from AHS, called Harris to discuss AHS's home security services.

38. Harris received a third call later that day on her Cell Phone and spoke with "Chris" from AHS.

39. The following day, October 18, 2022 "Albert" from AHS called Harris on her Cell Phone.

40. Harris also received a text message from AHS identifying the name of the company and its website on her Cell Phone on October 18, 2022.

41. As a result of the unlawful robocall, Ms. Harris experienced frustration, annoyance, irritation and a sense that her privacy had been invaded.

## **CLASS ALLEGATIONS**

42. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

43. Plaintiff seeks to represent the following class:

> **Pre-Recorded Voice Class:** All persons within the United States: (1) who received any telephone call/s from or on behalf of AHS; (2) to said person's cellular telephone or residential phone; (3) which utilized an artificial or prerecorded voice; (4) from four years prior to the filing of this Complaint until the date of certification.

> **DNC Class:** All persons within the United States who from four years prior to the date of the filing of this lawsuit to the date of class certification: (1) received more than one telephone call or text message from AHS or someone acting on its behalf (2) during a 12-month period; (3) where the calls were made in connection with a campaign to solicit products or services; and (4) whose number was registered on the Do Not Call Registry for more than 31 days at the time the calls were received.

44. Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

45. The putative class members' identities are readily ascertainable from Defendant's records or records within Defendant's control.

46. Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

47. Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests which might cause them not to vigorously pursue this action.

48. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

49. Class Members are so numerous and that their individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

50. Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

   a. Whether Defendant's conduct violates 47 U.S.C. § 227(b) and the corresponding rules and regulations implementing the TCPA;

   b. Whether Defendant's conduct violates 47 U.S.C. § 227(c) and the corresponding rules and regulations implementing the TCPA; and

   c. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

51. Plaintiff's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

52. Plaintiff will fairly and adequately protect the interests of the class members insofar and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this class action lawsuit.

53. The class action mechanism is superior to other available means for the fair and

efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

54. AHS is headquartered in this District. This District is therefore an appropriate forum in which to adjudicate this dispute. Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

## COUNT I
**Violations of the Telephone Consumer Protection Act**
**47 US.C. § 227(b)**
*Pre-Recorded Voice Claim*

55. Ms. Harris re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

56. Harris brings this Count individually and on behalf of all others similarly situated.

57. At all relevant times, Defendant knew or should have known that their conduct as alleged herein violated the TCPA.

58. Defendant placed unsolicited and unauthorized phone calls using an artificial or pre-recorded voice to the cellular or residential telephones of Plaintiff and the Class members for the purpose of marketing products and/or services to Ms. Harris and the Class.

59. Defendant knew or should have known they did not have prior express written consent to make these calls and knew or should have known that it was using an artificial or prerecorded voice in violation of the TCPA.

60. Defendant, willfully, and/or knowingly allowed telemarketing calls to be placed to Ms. Harris and Class members utilizing an artificial or pre-recorded voice. For instance, AHS could have determined from a review of its own business records that it did not have the required prior express written consent to contact Ms. Harris and/or Class members yet disregarded such information and placed illegal and unwanted solicitation calls to Ms. Harris and the Class.

61. The foregoing acts and omissions constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq.*

62. Defendant's conduct invaded Plaintiff's privacy.

63. Defendant's conduct was negligent, willful or knowing.

64. As a result of Defendant's violations, Plaintiff and each of the Class Members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and an award of $1,500.00 in statutory damages for each and every willing or knowing violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

65. Ms. Harris and the Class are also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

## COUNT II
### Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(c)(5)
### *Do-Not-Call Claim*

66. Ms. Harris re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

67. Harris brings this Count individually and on behalf of all others similarly situated.

68. The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

69. Defendant called Plaintiff for solicitation purposes despite the fact his number had been on the Do Not Call Registry since October of 2003.

70. Defendant called Plaintiff and the putative class members on multiple occasions during a single calendar year despite Plaintiff's registration on the Do Not Call list.

71. Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff and the putative class members.

72. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, and absent bona fide error or good faith mistake.

73. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

## **Prayer for Judgment**

WHEREFORE, Plaintiff HARRIS, individually, and or on behalf of all other similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendant AHS pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Ms. Harris as the class representative;

b. Enter an order appointing Kazerouni Law Group, APC as class counsel;

c. Enter judgment in favor of Ms. Harris and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(b) and up to $1,500 per violation of each subsection if Defendant willfully violated the TCPA;

d. Enter judgment in favor of Ms. Harris and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(c) and up to $1,500 per violation of each subsection if Defendant willfully violated the TCPA;

e. Enter injunctive relief against both Defendant as permitted under the TCPA;

f. Award Ms. Harris and the class all expenses of this action, and requiring Defendant to pay the costs and expenses of class notice and administration; and

**g.** Award Ms. Harris and the class such further and other relief the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff, HARRIS, demands a jury trial in this case.

Dated: December 29, 2023   Respectfully submitted,

KAZEROUNI LAW GROUP, APC

By: */s/ Amy Ginsburg*
Amy Ginsburg, Esq. (TX Bar ID: 224107506)
amy@kazlg.com
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (214) 880-6362
Fax: (800) 635-6425

1012 N. Bethlehem Pike Suite 103, Box #9
Ambler, PA 19002

Attorneys for Plaintiff

CLASS-ACTION COMPLAINT